IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN R. SUTHERLAND,<br><br>    Plaintiff,<br><br>v.<br><br>DIVERSIFIED CAPITAL INC, ET AL.,<br><br>    Defendants.                                   / | No. C 08-03474 CRB<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |

    Now pending before the Court is Plaintiff's motion for a temporary restraining order (TRO). Although the balance of hardships tips strongly in favor of Plaintiff, he has not raised serious questions going to the merits. Accordingly, the motion for a TRO is DENIED.

**BACKGROUND**

    Plaintiff alleges that in June of 2004 he obtained a loan in the amount of $500,000 from First Franklin Financial Corporation for the purpose of purchasing a residence. See Amended Complaint (AC) ¶ 10. The loan – codified in a Deed of Trust, see Opp. Exh. 1 – included an "Adjustable Rate Rider," which set forth the terms governing calculation of the loan's interest rate, see Opp. Exh. 2. According to the Adjustable Rate Rider, Plaintiff agreed to pay interest at a fixed yearly rate of 5.5% for the first two years, and at an adjustable rate tied to the London Interbank Offered Rate (LIBOR) thereafter. See id. §§ 2, 4. Specifically, the note stated that the interest rate could be increased after July 1, 2006 and

every sixth month thereafter to the LIBOR plus 3.625%, provided that the first increase would not exceed a total of 8.5%. See id. § 4. The note set a cap on the maximum interest rate allowable at 11.5%. See id. § 4(D).

The $500,000 note was eventually transferred to Defendant Countrywide Home Loans for "servicing." AC ¶ 11. Since origination of the loan, the interest rate has been increased over 3% and Plaintiff's resulting payments have more than doubled. See AC ¶ 12. Plaintiff is unable "to sustain and to meet the debt service requirements now imposed upon him," AC ¶ 12, and has failed to make a mortgage payment since July 2007. On March 14, 2008, Plaintiff received a Notice of Default, and Plaintiff's house is now scheduled for Trustee Sale by Countrywide on July 25, 2008.

Plaintiff filed a complaint and motion for TRO against Defendants in state court on June 30, 2008. The state court granted a TRO and scheduled a hearing on Plaintiff's motion for a preliminary injunction. Before the motion could be heard, Countrywide removed to federal court on the basis of federal question jurisdiction. Plaintiff then sought injunctive relief in this Court, requesting that Countrywide be enjoined from conducting the sale of Plaintiff's residence. This Court held a hearing on July 24, 2008 with counsel for both parties.

## STANDARD OF REVIEW

As with a motion for a preliminary injunction, the standard for evaluating a TRO requires the Court to balance the likelihood of success against the hardships to the parties. A preliminary injunction is appropriate when a plaintiff demonstrates either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor. See Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007). These two formulations are not different tests, but merely extremes on a single continuum: "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor."

Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).

## DISCUSSION

Plaintiff has adequately demonstrated that the balance of hardships tips strongly in his favor. If Countrywide is permitted to carry out the Trustee Sale, Plaintiff will lose his house forever. On the other side of the scale, it would not burden Countrywide greatly to postpone the sale in order to permit deeper analysis of the legal issues presented. Accordingly, Plaintiff is entitled to a TRO if he can raise serious issues going to the merits. Nonetheless, the Court finds that Plaintiff is unable to satisfy even this modest standard.

### I. First Cause of Action: California Financial Code § 4973

In his first cause of action, Plaintiff alleges that Countrywide violated California Financial Code § 4973 "by failing to reasonably determine that [Plaintiff] would be able to make the scheduled payments. . . ." AC ¶ 16. In relevant part, § 4973(f)(1) provides:

> A person who originates covered loans shall not make or arrange a covered loan unless at the time the loan is consummated, the person reasonably believes the consumer, or consumers, when considered collectively in the case of multiple consumers, will be able to make the scheduled payments to repay the obligation based upon a consideration of their current and expected income, current obligations, employment status, and other financial resources, other than the consumer's equity in the dwelling that secures repayment of the loan.

The first cause of action does not raise a serious question because Countrywide cannot be found liable under § 4973 for two independent reasons.

First, § 4973(f)(1) only applies, by its own terms, to "covered loans." In turn, a covered loan is defined as "a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust," and which also meets one of two conditions not relevant to the pending motion. Cal. Fin. Code § 4970(b).[1] In June of 2004, Fannie Mae set the loan limit for a single-family first mortgage loan at $333,700. See Opp. at Exh. 3. The evidence is

---

[1] The Federal National Mortgage Association is more commonly known as "Fannie Mae."

3

1  undisputed that the loan at issue was for $500,000, and was therefore a non-conforming
2  jumbo loan.  As a result § 4973(f)(1) does not apply to Plaintiff's loan.

3  Second, § 4973(f)(1) is only binding on originators of loans.  Plaintiff argues that even
4  if Countrywide did not originate his loan, Countrywide stands in the shoes of the originator,
5  First Franklin.  Plaintiff's argument is foreclosed by the fact that § 4973 explicitly does not
6  apply to holders in due course.  See Cal. Fin. Code § 4979.8 ("The provisions of this division
7  shall not impose liability on an assignee that is a holder in due course.  The provisions of this
8  division shall not apply to persons chartered by Congress to engage in secondary market
9  transactions.").

10  II. First Cause of Action: Truth in Lending Act (TILA)

11  In his first cause of action, Plaintiff also alleges that Countrywide violated the federal
12  Truth in Lending Act, 15 U.S.C. § 1601, by "failing to make proper disclosures concerning
13  the details of the loan."  AC ¶ 16.  When pressed at oral argument, Plaintiff contended that
14  the loan failed to make four requisite disclosures: (1) the fact that the interest rate would
15  increase; (2) the date upon which the rate would increase; (3) the amount of the rate increase;
16  and (4) the fact that Plaintiff would not be able to afford an adjustable rate mortgage.

17  Plaintiff is correct that a lender must disclose: (1) "[t]he fact that the interest rate . . .
18  can change"; (2) "[t]he frequency of interest rate and payment changes"; and (3) "how the
19  interest rate and payment will be determined."  12 C.F.R. § 226.19(b)(2)(i), (2)(iii), (2)(vi).
20  The note, however, met all three requirements by plainly setting forth the details of
21  Plaintiff's adjustable rate in section four of that document.  First, the note provided that
22  Plaintiff's interest rate "may change."  See Opp. Exh. 2 § 4(A).  Second, the note explained
23  that the rate increase would take effect "on the first day of July 2006, and on that day every
24  sixth month thereafter."  Id.  Third, the note provided that the increase would be calculated
25  by adding 3.625% to the then current LIBOR index, but would not exceed 11.5% and, after
26  the first "Change Date," would never increase or decrease in any six month period by more
27  than 1% from the rate of interest for the preceding six months.  Id. §§ 4(C), 4(D).  There can
28

4

be no doubt that these provisions were written "clearly and conspicuously" and therefore in compliance with TILA. 12 C.F.R. § 226.5.

Plaintiff's alternate argument must fail because there is no justification that would authorize the Court to read TILA as requiring lenders to disclose the fact that the borrower may not be able to afford an adjustable rate mortgage. Plaintiff was unable to cite – and the Court has been unable to identify – any TILA provision that requires lenders to disclose their opinion as to whether or not the borrower will be able to meet the resulting payments. Because TILA regulations <u>do</u> set forth specific disclosure requirements relating to adjustable interest rates, the Court assumes – pursuant to the doctrine of <u>expressio unius est exclusio alterius</u> – that the exclusion of the requirement proposed by Plaintiff was intentional. <u>See Silvers v. Sony Pictures Entm't, Inc.</u>, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (holding that the doctrine "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions") (internal quotation marks omitted).

### III. Fourth Cause of Action: Breach of Contract

In his fourth cause of action, Plaintiff alleges that Countrywide breached its contract with Plaintiff. At oral argument, Plaintiff conceded that Countrywide violated no express contractual term, and limited his claim to an alleged violation of the implied covenant of good faith and fair dealing. Essentially, Plaintiff maintains that Countrywide violated the implied covenant by raising his interest rates exorbitantly.

It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." <u>Kransco v. Am. Empire Surplus Lines Ins. Co.</u>, 23 Cal. 4th 390, 400 (2000) (quotation omitted). "However, the implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." <u>Wolf v. Walt Disney Pictures and Television</u>, 162 Cal. App. 4th 1107, 1120 (2008). If the defendant did what it was expressly given the right to do, there can be no

breach of the implied covenant.  See Carma Developers, Inc v. Marathon Development California, Inc., 2 Cal. 4th 342, 374 (1992).  Here, Countrywide raised Plaintiff's interest rate in accordance with the terms set forth in section four of the Adjustable Rate Note.  Consequently, Countrywide's actions cannot serve as the predicate for a breach of contract cause of action.

### IV. Fifth Cause of Action: Declaratory Relief

At oral argument, Plaintiff conceded that his cause of action for declaratory relief is derivative of his claim for breach of contract.  Because the breach of contract claim does not raise a serious question, neither does the cause of action for declaratory relief.

### V. Sixth Cause of Action: Injunctive Relief

Similarly, Plaintiff's cause of action for injunctive relief turns on the validity of Plaintiff's other claims.  Because none of Plaintiff's other claims raise serious questions, relief cannot be based on claim six.

### CONCLUSION

Plaintiff has not raised serious issues going to the merits; the motion for a temporary restraining order is DENIED.

**IT IS SO ORDERED.**

Dated: July 24, 2008

MAXINE M. CHESNEY
UNITED STATES DISTRICT JUDGE

FOR CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE